WESTERN DIST.
*August*, 1834.

**KEYS ET ALS. *vs* POWELL AND WIFE.**

KEYS ET ALS.
*vs.*
POWELL ET ALS.

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, THE JUDGE
THEREOF PRESIDING.

Where defendants claim title to certain property under an act *sous seing
prive*, dated on a particular day in Baton Rouge, and the plaintiffs show,
that *on that very day*, in another state, one hundred and seventy miles
distant, the same vendor executed a power of attorney before a justice
of the peace, *to the same vendee: Held*, that this fact, connected with
the circumstance that this person, executing the two acts, had at that
time left the state to avoid a criminal prosecution, will be considered
such violent presumption of forgery and perjury, as will require the
verdict to be set aside, and the cause remanded for a new trial.

The plaintiffs sue as the surviving wife and children, and
the forced heirs and legal representatives, of James Sides,
deceased. They allege, that in 1819, James Sides purchased
a negro woman for one thousand dollars, as community pro-
perty, who has since had two children, Peggy and Alfred,
about ten and twelve years of age, which now belong to
them as the surviving wife and children of the deceased; that
one Hiram Powell and Charity Keys, his wife, have taken
possession of said slaves, and claim them as their own. They
pray judgment that the two slaves be restored to them, or
their value, alleged to be worth four hundred dollars each;
and that there is danger of the defendants running said slaves
out of the state: they further pray, that they be sequestered,
&c.

Powell and wife pleaded a general denial; they deny that
Dorothy Keys, one of the plaintiffs, was the wife of James
Sides, deceased; they deny that Susan Shelton and Susan
Sides, the other plaintiffs, are heirs of James Sides, deceased;
they aver, that Charity Keys, wife of defendant, inherited the
negro woman Dinah and her two children, Peggy and Alfred,
from her brother, Job Keys, as appears from his will; that
Job Keys purchased the said slaves from James Sides in his
life-time; that the said Dorothy Keys acknowledged after
the said sale that the full price had been paid for said slaves,

and that she was satisfied with the terms of sale ; they then plead the prescription of five and ten years against the plaintiff's demand.

The evidence shows, that James Sides purchased the slave Dinah by public act, passed before the parish judge of East Baton Rouge, dated the 10th August, 1819, for the price of one thousand dollars ; that on the 28th February, 1825, he sold said slave, then about twenty-eight years old, and her two children, Peggy and Alfred, aged four and three years, together with another slave, to Job Keys, for one thousand and two hundred dollars, by act *sous seing privé*, but recorded on the 19th August, 1825, at the request of the vendee.    In this act, James Sides, the vendor signed the act of sale by making his mark, in the presence of two witnesses.

In 1827, Job Keys made his will, and bequeathed the slave Dinah and her children, Peggy and Alfred, to his sister Charity Keys, the wife of defendant, Powell.

The defendants produced in evidence, a mortgage on the slaves in contest, executed by Sides in October, 1824, to secure the payment to Job Keys, the sum of eight hundred dollars ; also the answer of Joseph Hickman, a witness to the bill of sale from Sides to Keys, taken to interrogatories, wherein he declares he signed the bill of sale as a witness, and saw James Sides make his mark to his signature thereto. The act of sale · purports to have been made in East Baton Rouge, on the day it is signed, to wit, 28th February, 1825.

The plaintiffs offered in evidence a power of attorney, signed by James Sides, in Copiah county, in the state of Mississippi, dated 28th February, 1825, the same day on which the act of sale purports to be executed, constituting the same Job Keys his attorney in fact, to dispose of his property in Louisiana ; also an act of sale of two tracts of land belonging to Sides, to James Mather, dated 17th January, 1826, by said Keys as attorney in fact; and an act of sale of Mather to Keys of two tracts of land, in April, 1827 ; and also the tableau of distribution of the estate of Job Keys, made in 1827, on which Dinah and her two children, Peggy and Alfred, are put down at seven hundred dollars.

The plaintiff proved by witnesses the marriage of James Sides and Dorothy Keys, and that Susan Shelton and Susan Sides, the other two plaintiffs, are their children.

*Hawes*, a witness for the plaintiff swears, he had a conversation with Job Keys in the spring of 1827, who said Sides had been in the parish the evening before, and was much distressed for money : " Keys further stated, Sides was coming over to give him a *bill of sale, or had already made him a sale of the negroes*," &c.  The bill of sale produced in evidence, bears date two years before this.

*Watts*, a witness for defendants, says Job Keys had the negroes in possession a year before his death.  He died in 1827.  Witness has had the negroes in possession since, as his executor; he delivered them to him.

The jury returned a verdict for the defendants, and judgment was rendered in conformity thereto, from which the plaintiffs appealed.

*Elam*, for the plaintiffs, relied on the presumption of forgery of defendants' title, arising from the fact of its being executed on the day, which the evidence shows, the vendor was in another state, nearly two hundred miles off.

*T. G. & M. Morgan, contra.*

*Bullard, J.*, delivered the opinion of the court.

The plaintiffs alleging that they are the widow and heirs of James Sides, deceased, set up title to certain slaves in possession of the defendants, and sue for their recovery.  The defendants derive title to them under the last will and testament of Job Keys, who, they allege, purchased them in his life-time, of the ancestor of the plaintiffs.  The cause was tried by a jury in the court below, who found a verdict in favor of the defendants, and the plaintiffs appealed.

Where defendants claim title to certain property under an act *sous seing privé*, dated on a particular day in Baton Rouge, and the plaintiffs show, *that on that very day*, in another state, 170 miles distant, the same vendor executed a power of attorney, before a justice of

The sale from Sides to Keys, which was given in evidence, is a private act, under the ordinary mark of the vendor.  Its execution is sworn to by one of the subscribing witnesses.  It purports to have been executed in the parish of East Baton

Rouge, on the 28th of February, 1825. To rebut this evidence the plaintiff exhibited to the jury, a power of attorney executed by Sides, by which he constituted the same Job Keys his attorney in fact, with power to sell and dispose of any property of the principal, in the parish of East Baton Rouge, bearing the same identical date, and executed and acknowledged before a justice of the peace, in the county of Copiah, in the state of Mississippi, at a distance of one hundred and seventy miles from Baton Rouge. This power of attorney was accepted by Job Keys, who proceeded to act under it, and actually disposed of certain property of the principal. In addition to this, it is shown that Sides had left the State, to avoid a criminal prosecution, had confided his property to Keys, and never returned except on one occasion, and then clandestinely. These circumstances raise such violent presumption of forgery and perjury, the two instruments seem so utterly inconsistent with each other, the one appearing from the evidence before us, to render it impossible that the other can be genuine, that we feel ourselves bound to set aside the verdict.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court, be annulled and reversed, and that the case be remanded for a new trial, and that the defendants and appellees pay the costs of the appeal.